

# In the Missouri Court of Appeals

## Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| DAVID BERGSTROM and KAYE BERGSTROM, | ) ) ) | No. ED102125 |
| Appellants, | ) ) | Appeal from the Circuit Court |
| vs. | ) ) | of the City of St. Louis |
| WELCO MANUFACTURING COMPANY, | ) ) ) | Hon. Robert H. Dierker |
| | ) | Filed: |
| Respondent. | ) | September 22, 2015 |

David and Kaye Bergstrom[1] ("Bergstrom") appeal from the trial court's grant of Welco Manufacturing Company's ("Welco") motion for summary judgment. We reverse and remand.

Bergstrom worked as a contractor installing dry-wall for various companies throughout Minnesota and other states from 1962 until 2011. In June of 2013, he was diagnosed with mesothelioma. Bergstrom eventually filed a petition against Welco and other companies for having sold, distributed, and/or installed asbestos containing products, which he alleges caused his mesothelioma. Bergstrom asserted causes of action for strict liability, negligence, willful and wanton misconduct, conspiracy, and loss of consortium. Welco subsequently filed a motion for summary judgment. Welco

---

[1] We note David Bergstrom and Kaye Bergstrom filed the initial petition in this case. David Bergstrom passed away from mesothelioma during the pendency of the litigation. Kaye Bergstrom then filed an amended petition in her own name asserting the same theories of liability. However, because all of the issues in the cases concern David Bergstrom, we will refer to the plaintiff as simply, Bergstrom.

contended Bergstrom did not present any evidence identifying any asbestos or asbestos-containing products manufactured or distributed by Welco to which he was exposed. Bergstrom filed a response to Welco's motion for summary judgment in which he alleged he presented evidence of his exposure to Welco's asbestos-containing products, and, as a result, Welco was not entitled to summary judgment.

The trial court granted Welco's motion for summary judgment. In its judgment, the trial court noted Bergstrom stipulated during a deposition that he would not have had any exposure to asbestos-containing joint compound after 1979. The trial court also pointed to testimony where Bergstrom allegedly admitted he was not exposed to Welco products before 1979.

Bergstrom, however, contends that he did not make a clear admission and that that testimony was contradicted by other testimony. Bergstrom also filed a correction to his deposition testimony, asserting he misspoke and that he meant to say he worked with Welcote joint compound, a Welco product, prior to 1979. However, the trial court found this testimony was insufficient to create a triable issue of fact as to whether Bergstrom was exposed to Welco's asbestos-containing product, which was allegedly a substantial factor in causing his injury.[2]

Bergstrom then filed a motion requesting that the trial court reconsider its grant of summary judgment. Welco filed a motion to strike Bergstrom's motion to reconsider.

---

[2] Rule 57.03(f) allows a witness to make changes in form or substance that the witness desires to make upon an errata sheet provided to the witness with a statement of the reasons given for making such changes. The answers or responses as originally given, together with the changes made and reasons given therefor, shall be considered as a part of the deposition. Id. This rule is intended to afford an opportunity to correct errors of the reporter in transcribing and also to permit a witness, who decides he gave a wrong answer, to have it corrected. See Loveland v. Rowland, 361 S.W.2d 685, 688 (Mo. 1962) (dealing with a previous version of Rule 57.03). If an answer is changed, the adequacy of the reasons stated and the determination of the truth of conflicting statements will be for the trier of the fact. Id.

The trial court initially declined to hear Bergstrom's motion to reconsider. Bergstrom then filed a motion to amend the judgment, through which it essentially sought to have the trial court reverse its grant of summary judgment.

The trial court issued a "Memorandum and Order" addressing Bergstrom's motion to reconsider the grant of summary judgment and his motion to amend the judgment. The trial court reexamined the record on the motion for summary judgment and found: Bergstrom concedes he was not exposed to any asbestos-containing joint compounds after 1979. There is no question Welco manufactured and sold asbestos-containing joint compound known as Welcote prior to 1976. Moreover, there is no question Bergstrom worked with Welcote during his career.

Then the trial court considered the remaining question: does the record create a genuine issue of material fact as to whether Bergstrom worked with Welcote asbestos-containing joint compound prior to 1979? According to the trial court, the record clearly shows, between 1976 and 1979, Welco manufactured and sold two types of joint compound, one with and one without asbestos. Further, the trial court found Bergstrom's testimony established he worked with Welcote joint compound during his career, but it did not establish he worked with asbestos-containing Welcote joint compound at any specific time. The trial court further noted the record only established Bergstrom worked with Welcote at some time prior to 1979, but Bergstrom's testimony does not establish exactly when he worked with Welcote. In the trial court's view, this evidence fell short of creating a genuine issue of material fact as to whether asbestos-containing Welcote caused or contributed to his injury, and the burden was on Bergstrom to show exposure to the asbestos-containing Welcote rather than the non-asbestos-containing Welcote.

Bergstrom failed to meet that burden. As a result, the trial court denied Bergstrom's motions to reconsider and amend its earlier judgment. This appeal follows.[3]

In determining whether a trial court has properly granted summary judgment, we review the matter de novo and give no deference to the trial court's decision. McClain ex rel. Rutledge v. James, 453 S.W.3d 255, 265 (Mo. App. S.D. 2014). We employ the same criteria the trial court should have used in deciding whether to grant the motion. Id. To establish a right to summary judgment, a defending party must show: (1) facts that negate any one of the plaintiff's elements facts, (2) that the plaintiff, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the plaintiff's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the respondent's properly-pleaded affirmative defense. Id. We review the record in the light most favorable to the party against whom judgment was entered and accord the non-movant the benefit of all reasonable inferences. Id. The rule that the non-movant is "given the benefit of all reasonable inferences" means that if the movant requires an inference to establish his right to judgment as a matter of law, and the evidence reasonably supports any inference other than (or in addition to) the movant's inference, a genuine dispute exists and the movant's prima facie showing fails. ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp., 854 S.W.2d 371, 382 (Mo. banc 1993)

A genuine issue exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. Id. at 265-66.

---

[3] Bergstrom subsequently dismissed all pending claims against all of the other remaining parties other than Welco. Thus, there was a final, appealable judgment.

4

Summary judgment is an extreme and drastic remedy and we exercise great caution in affirming it because the procedure cuts off the opposing party's day in court. Id. at 266.

In his sole point, Bergstrom argues the trial court erred in granting Welco's motion for summary judgment because Welco failed to establish there was no genuine issue as to any material fact and that it was entitled to judgment as a matter of law in that (1) there was sufficient evidence to support a finding that Bergstrom worked with or around asbestos-containing joint compound supplied by Welco, and (2) there was insufficient evidence to establish conclusively that Welco removed asbestos from its joint compound products by 1976. We agree.

Bergstrom testified by deposition that he had been a professional drywaller since the late 1960s up to 2011. Over the course of his career, he testified, he worked with numerous joint compounds, including Welcote. Bergstrom stated "over the course of [his] career," he breathed dust from sanding Welcote joint compounds many times.

Bergstrom stipulated he would not have had any exposure to asbestos-containing joint compound after 1979. Bergstrom later testified he could not provide any testimony that he ever worked with or around Welcote joint compound before the year 1979. However, Bergstrom was subsequently asked whether it was "fair to say that with respect to the plasters and the joint compounds [including Welcote] that you identified . . . [during your deposition] . . . that you worked – had the opportunity to work with and around all of those prior to 1979." Bergstrom responded, "[y]es," and that he might have continued working with them or some of them after 1979 as well. Bergstrom also filed a correction to his deposition, asserting that he misspoke when he testified he could not provide any testimony that he ever worked with or around Welcote joint compound

5

before the year 1979. Bergstrom asserted he meant to say he worked with all of the joint compounds that were previously mentioned, which included Welcote, prior to 1979.

Milton Strader, the owner of Welco since 1990, testified he could not state exactly when Welco's joint compounds became asbestos-free. In his affidavit, he testified, however, that he was aware of no documents from any source showing any purchase of asbestos by Welco after 1975. Strader also provided a letter from a chemist from Welco dated February 9, 1976, which stated "[t]his is to certify that Welco Ready Mix Joint Compound and Welco Spray texture paints contain no asbestos." Strader also provided a letter dated February 24, 1976 from the vice-president of Welco stating, among other things, "[w]e are not using asbestos fibers in the manufacture of any of our products." Moreover, Strader provided a memorandum to all salesman at Welco, which stated Welco did not use asbestos in any of its products. This memorandum was dated June 13, 1977. Lastly, Strader included a letter dated May 31, 1977 from its president at that time, which stated they discontinued the use of asbestos in their products "some time ago." However, Strader testified he did not know when the authors of these letters acquired the information they put into these letters. The legal file also includes an internal memorandum from Union Carbide dated May 18, 1976, which states Welco is no longer using asbestos of any kind.

Bergstrom disputes the truthfulness of the statements in each of these letters and memorandums as well as the authenticity of the letters. Bergstrom has shown he worked with Welcote over the course of his career as a drywaller, which spanned from 1962 until 2011. As noted above, Bergstrom also stated "over the course of [his] career," he breathed dust from sanding Welcote joint compounds many times. While Bergstrom

6

stipulated he would not have had any exposure to asbestos-containing joint compound after 1979, he still could have been exposed between 1962 and 1979. Further, in Bergstrom's corrected testimony he stated he meant to say he worked with all of the joint compounds that were previously mentioned, which included Welcote, prior to 1979. Thus, there are seventeen years of Bergstrom's career in which he could have been working with asbestos-containing Welcote joint compound.

As noted above, Welco provided some evidence that on certain dates in 1976 and 1977, the asbestos was removed from its products. Even if we accept this evidence, it still leaves at least fourteen years of Bergstrom's career when he alleges he worked with Welcote joint compound that would have contained asbestos according to the record before us.

As a result, for Welco to prevail, we have to make an inference that Bergstrom did not work with asbestos-containing Welcote joint compound between 1962 and 1976. However, our standard of review prevents us from making such an inference because it is at least equally probable that Bergstrom worked with asbestos-containing Welcote joint compound between 1962 and 1976. As a result, we must construe the inference in favor of Bergstrom. Moreover, doing so creates a genuine issue of material fact that precludes a grant of summary judgment. To withstand summary judgment on the issue of causation, a plaintiff must demonstrate there are genuine issues of material fact regarding whether exposure to asbestos-containing Welcote joint compound was both the cause in fact and the proximate cause of plaintiff's injury. Sundermeyer v. SSM Regional Health Services, 271 S.W.3d 552, 554 (Mo. banc 2008). Bergstrom has demonstrated such a genuine issue of fact here.

7

Therefore, the trial court erred in granting Welco's motion for summary judgment because Welco failed to establish there was no genuine issue as to any material fact. Once the disputed facts are determined by a trier of fact, there could be sufficient evidence to support a finding that Bergstrom worked with or around asbestos-containing joint compound supplied by Welco between the years of 1962 and 1976. Point granted.

The judgment of the trial court is reversed and remanded.

ROBERT G. DOWD, JR., Presiding Judge

Lisa S. Van Amburg, C.J. and
Roy L. Richter, J., concur.